IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SHARYN STAGI and WINIFRED LADD, Individually and on behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION,<br><br>             Defendants. | Civ. Action No. 03-5702 |

**July \_\_\_, 2012**                                                                                          Anita B. Brody, J.

## MEMORANDUM

   Following nine years of class action litigation between named Plaintiffs Sharyn Stagi and Winifred Ladd and Defendant National Railroad Passenger Corporation ("Amtrak"), class counsel have brought before me a motion for final approval of proposed class action settlement (Doc. No. 139) and a petition for award of attorneys' fees, reimbursement of expenses, and for special payments to named plaintiffs (Doc. No. 140).[1]  After holding a final fairness hearing on June 25, 2012, I will now approve the final settlement agreement.  I will also grant the request for attorneys' fees, reimbursement of expenses and incentive awards for class representatives.  The related Order Granting Final Approval of Class Action Settlement and Entering Final Judgment provides an overview of the approved agreement.  Here, I will only address my approval of attorneys' fees.

---

[1] On June 6, 2012, Plaintiffs filed a Supplement to Class Counsel's Fee Petition (Doc. No. 141) to correct two errors related to the reimbursement of litigation expenses.

1

## I. Background

Plaintiffs Sharyn Stagi and Winifred Ladd brought this civil action against Amtrak asserting that a company policy ("One Year Rule") that requires all union employees to have one year of service in their current position before they will be considered for promotion has a disparate impact on female union employees in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  The approved settlement agreement resolves all claims asserted by Plaintiffs and the members of the settlement class against Amtrak and will result in Amtrak's permanent elimination of the One Year Rule as applied to union employees and a cash payment to the class of $1,990,000, less amounts for attorneys' fees, expenses of litigation and settlement administration.

## II. Attorneys' Fees & Expenses

Class counsel request attorneys' fees in the amount of $1,219,467.79, which represents twenty-seven percent of the minimum projected value of the settlement.[2]  Class counsel also seek reimbursement of litigation and settlement administration expenses in the amount of $180,532.08.  The combined value of the requested fee award and reimbursement of expenses is $1,399,999.87.  The mailed Notice of Certification of Settlement Class and Proposed Class Action Settlement informed the settlement class members that class counsel would seek an award of attorneys' fees and expenses "in an amount that [would] not exceed $1,400,000."  No class member objected to any aspect of the proposed settlement agreement.

---

[2] The minimum projected value includes the proposed cash settlement and Dr. Crawford's calculation of injunctive relief.  *See* Crawford Decl. (Doc. No. 140-3).  Dr. Crawford provides an estimate of the financial value of the provision of the Settlement Agreement in which Amtrak agrees to eliminate the One Year Rule.  He "define[s] that value as the damages that would likely have been suffered by female employees who would not have been promoted, but for the agreement to abolish the One Year Rule."  Crawford Decl.  Although less than half of the settlement is in cash, the elimination of the One Year Rule provides prospective financial value.  Nonetheless, I recognize that injunctive relief can be difficult to approximate, so I rely upon Dr. Crawford's more conservative estimates.

Federal Rule of Civil Procedure 23(h) states: "In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  The proposed settlement agreement provides for the award of attorneys' fees and expenses.  Nonetheless, "a thorough judicial review of fee applications is required in all class action settlements." *In re Prudential Ins. Co. of Amer. Sales Practice Litig.*, 148 F.3d 283, 333 (3d Cir. 1998) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819 (3d Cir. 1995)).

Courts generally use one of two methods for assessing requests for attorneys' fees: the lodestar method or the percentage-of-recovery method. *In re Prudential*, 148 F.3d at 333.  The former is "more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *Id.*  The latter method is "generally favored in cases involving a common fund . . . ." *Id.*  Either way, "it is sensible for a court to use a second method of fee approval to cross-check its initial fee calculation." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).  This case involves a common fund, and therefore the percentage-of-recovery method is appropriate.

### 1. Common Fund

"[I]n the traditional common fund situation . . . the district court . . . should attempt to establish a percentage fee arrangement agreeable to the Bench and plaintiff's counsel."  Report of the Third Circuit Task Force on Court Awarded Attorney Fees, 108 F.R.D. 237, 255 (1985). In order to make that determination, the Third Circuit has identified ten factors for the Bench to consider.  These include:

>(1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000); *In re Prudential*, 148 F.3d at 336-40). These *Gunter/Prudential* factors are not exhaustive, and a district court should consider "'any other factors that are useful and relevant with respect to the particular facts of the case.'" *In re Diet Drugs*, 582 F.3d at 541 n.34 (quoting *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 166 (3d Cir. 2006)).

### a. The Size of the Fund Created and the Number of Persons Benefitted

The settlement is for $1.99 million and injunctive relief worth a *minimum* estimated value of $2.5 million over the next four years.[3] *See* Crawford Decl. (Doc. No. 140-3). The settlement class is estimated to have 5,383 current members. The elimination of the One Year Rule will also benefit future, unionized Amtrak employees.

In general, as the size of the settlement fund increases the percentage of the award decreases. *See In re Prudential*, 148 F.3d at 339. "The basis for this inverse relationship is the belief that '[i]n many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel.'" *Id.* (citing *In re First Fid. Bancorporation Sec. Litig.*, 750 F. Supp. 160, 164 n.1 (D.N.J. 1990)). But this case does not involve a settlement award that is so large as to necessitate an automatic reduction in the percentage award. The

---

[3] The $1.99 million includes settlement administration expense reimbursements of up to $40,000, subject to reversion to Amtrak of any unspent balance of the $40,000.

*Prudential* recovery was in excess of $1 billion, and the Third Circuit cited to the trial court's analysis of settlements above $100 million for establishing the inverse relationship principle. *See In re Prudential*, 148 F.3d at 339 (referencing *In re Prudential*, 962 F. Supp. 572, 585 (D.N.J. 1997)).  None of Plaintiffs' expert calculations qualify this proposed settlement fund for a mega-fund reduction in fees.  *See* Crawford Decl.  Therefore, the size of the fund and the number of people who will receive the maximum damages militate in favor of approving this fee petition.

### b. The Presence or Absence of Substantial Objections by Members of the Class to the Settlement Terms and/or Fees Requested by Counsel

All objections had to be postmarked on or before June 11, 2012.  As of the afternoon of June 18, 2012, no objections were filed.  *See* Lempert Decl. (Doc. No. 142).  The absence of objections counsels in favor of approval.

### c. The Skill and Efficiency of the Attorneys Involved

Sandals & Associates, P.C., along with Kolman Ely, P.C., served as counsel for the named Plaintiffs and class since the inception of the action in 2003.  Sandals & Associates did the vast majority of the legal work.  The firm's attorneys Scott Lempert and Alan Sandals have approximately forty-six years of combined experience in complex ERISA and class action litigation.  Both attorneys have spearheaded a number of class action lawsuits and are leading members of the national ERISA plaintiffs' bar.  *See, e.g.*, *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 242 F.3d 497 (3d Cir. 2001); *In re Campbell Soup Co. Retiree Med. Benefits ERISA Litig.*, 898 F. Supp. 1118 (D.N.J. 1995).  The firm has brought its considerable experience to bear in reaching this settlement.  Also, the fact that Plaintiffs' counsel obtained this settlement in the face of formidable legal opposition further evidences the quality of their work.  This factor weighs in favor of approval.

### d. The Complexity and Duration of the Litigation

Class counsel devoted more than nine years to this highly complex litigation. In addition to conducting extensive discovery, counsel utilized statistical evidence to survive Amtrak's dispositive motions. Counsel not only filed written briefs but also participated in oral arguments regarding Plaintiffs' motion for class certification and Defendant's motion for summary judgment. Class Counsel also appealed the summary judgment ruling in favor of Amtrak and won. The Third Circuit's remand extended the duration of the litigation, weighing in favor of approval. Following the remand, class counsel worked diligently on reaching a settlement.

### e. The Risk of Nonpayment

In every class action in which class counsel bring a case on a contingency basis, there is always some risk of nonpayment. However, the risk here is minimal. In *Rite Aid*, the Third Circuit dealt with this factor by considering the risk of the defendants going out of business. *In re Rite Aid Corp.*, 396 F.3d 294, 304 (3d Cir. 2005). Amtrak is not in danger of going out of business, so this is a neutral factor.

### f. The Amount of Time Devoted to the Case by Plaintiffs' Counsel

In their declarations, class counsel provide summaries of the amount of time spent on this matter. Sandals & Associated logged 2,920.6 hours. Attorney Scott Lempert accounted for 2,556.1 of those hours. Kolman Ely, P.C. expended 174.4 hours on this litigation. *See* Lempert Decl.; Ely Decl. In total, class counsel devoted 3,095 hours to this matter. Such a large number of hours represents a substantial commitment to this litigation and weighs in favor of approving the fee request. The record of this litigation also indicates that the time spent by class counsel was necessary for the successful prosecution of this case considering both the complexity involved and the defense mounted by Amtrak.

### g. The Awards in Similar Cases

As I noted in *In re Corel*, this District's fee awards generally range between nineteen and forty-five percent of the common fund. *See In re Corel Corp., Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 497 (E.D. Pa. 2003) (referencing *In re Smithkline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990)); *see also Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. LEXIS 38663, at *59 (D.N.J. Apr. 8, 2011) ("In common fund cases, fee awards generally range anywhere from nineteen percent to forty-five percent of the settlement fund.") (citing *In re G.M.*, 55 F.3d at 822). Therefore, the twenty-seven percent request in this case is reasonable. By itself, this factor neither supports nor undercuts the proposed fee award and is neutral. This factor in conjunction with the lodestar cross-check, however, weighs in favor of approval.

### h. The Value of Benefits Attributable to the Efforts of Class Counsel Relative to the Efforts of Other Groups

Class counsel was not assisted by a government investigation. In *Prudential*, the Third Circuit singled this factor out for important consideration by district courts. *See In re Prudential*, 148 F.3d at 338. The appeals court remanded the trial court's fee award for wrongly "credit[ing] class counsel with creating the entire value of the settlement" and overlooking the considerable contributions of a multi-state life insurance task force. *Id.* Yet this case is more similar to *AT&T*, in which the Third Circuit found that "class counsel was not aided by the efforts of any governmental group, and the entire value of the benefits accruing to class members is properly attributable to the efforts of class counsel." *In re AT&T*, 455 F.3d at 173. This factor supports approval of the fee request.

7

> **i. The Percentage Fee that Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement at the Time Counsel was Retained**

It is extremely difficult to determine what fee would have been negotiated at the outset of the litigation. I can only look to my colleagues who have attempted to apply this factor, even though I recognize that the contingent fee can only be "based on the particular facts and circumstances of the specific litigation under consideration." *In re U.S. Bioscience Sec. Litig.*, 155 F.R.D. 116, 119 (E.D. Pa. 1994). After appointing a Special Master to study the award of attorneys' fees in a class action securities suit, Judge Dalzell approved of the Special Master's recommendation that a thirty percent fee award was an appropriate estimate of what would have been negotiated. *See id.* (citing Report and Recommendation of Special Master Judge Arlin M. Adams).

In the end, I do "not give great weight to this hypothetical exercise." *In re Prudential*, 148 F.3d at 340. Although this is not a proposed settlement in the range of *Prudential*'s $1 billion, this is still a significant sum of money that should not be subjected to such arbitrary calculations. Therefore, this factor is neutral and will not be considered to count for or against the proposed fee request.

> **j. Any Innovative Terms of Settlement**

In addition to the monetary settlement, Amtrak also eliminated the One Year Rule, effective September 8, 2011. As a result, current and future unionized employees will not have to complete one year of service in their current positions before being considered for promotion. Female employees will no longer be subjected to the rule's disparate impact. This factor counsels in favor of approval.

### k. Summation

I recognize that the *Gunter/Prudential* factors "'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'" *In re AT&T*, 455 F.3d at 166 (citing *In re Rite Aid*, 396 F.3d at 301). After reviewing all of the factors, I have determined that seven of the ten *Gunter/Prudential* factors counsel in favor, zero against, and three are neutral. Therefore, the majority support approval of the fee award.

## 2. Lodestar

The lodestar cross-check also favors approval of the fee request. "The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid*, 396 F.3d at 305.

### a. Number of Hours & Hourly Rate

As of May 17, 2012, class counsel and staff informed the Court that they had spent a total of 3,095 hours working on this case. The nine years of litigation involved, amongst other work, preparing the complaint, responding to dispositive motions, winning on appeal, and participating in extensive settlement negotiations. The law firms charged different amounts based on their average billable rates and the individual attorney or staff member working on the assignment. Taking into account the varied rates, the lodestar requires multiplication of the hours reasonably worked by the reasonable billing rates. I found that the rates were reasonable and recognize that the equation results in a total lodestar of $1,373,601.

### b. Lodestar Multiplier

"After a court determines the lodestar amount, it may increase or decrease that amount by applying a lodestar multiplier." *In re Diet Drugs*, 582 F.3d 524, 539 (3d Cir. 2009) (citing *In re*

*Rite Aid*, 396 F.3d at 305-06). The Third Circuit explained that "multipliers may reflect the risks of non-recovery facing counsel, may serve as an incentive for counsel to undertake socially beneficial litigation, or may reward counsel for extraordinary result. By nature they are discretionary and not susceptible to objective calculation." *In re Prudential*, 148 F.3d at 340. The lodestar multiplier is calculated by dividing the attorneys' fees sought by class counsel ($1,219,467.79) by the total amount of hours class counsel devoted to the litigation times class counsel's hourly rates ($1,373,601). Here, that calculation comes to a multiplier of .888. Therefore, class counsel will only be receiving approximately 89% of what they would have received at their regular billing rates. I have previously approved a positive multiplier of 2.04, in which counsel received twice what they would have earned under their regular billing rates. *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000). The Third Circuit, moreover, has recognized that "'multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'" *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (citing *In re Prudential*, 148 F.3d at 341). Therefore, a negative multiple of .888 is well under the generally acceptable range and provides strong additional support for approving the attorneys' fee request.

### III. Conclusion

For the reasons set forth above, I will grant Plaintiffs' Motion for Award of Attorneys' Fees.

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:   Copies **MAILED** on _____ to: